**Michael JONES, Petitioner,**

v.

**Edward DONNELLY, Superintendent of Wende Correctional Facility, Respondent.**

**No. 03 Civ. 396(VM).**

United States District Court, S.D. New York.

April 10, 2007.

Michael Jones, Napanoch, NY, pro se.

Tae-Hoon Charles Won, District Attorney's Office, Bronx, NY, for respondent.

### DECISION AND ORDER

MARRERO, District Judge.

On June 8, 2006 petitioner Michael Jones ("Jones") filed an amended petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On March 28, 2007, the Court dismissed Jones's petition and indicated that it would set forth the findings, reasoning and conclusions for its ruling in a subsequent decision and order.

## I. BACKGROUND [1]

### A. THE UNDERLYING CONVICTION

On February 11, 1999, judgment was entered following a jury trial, convicting Jones of Manslaughter in the First Degree (New York Penal Law § 125.20[1]) and Criminal Use of a Firearm in the First Degree (New York Penal Law § 265.09[1]). Jones was sentenced to the statutory maximum for each count—an indeterminate term of imprisonment from 12½ to 25 years and a determinate term of imprisonment of 5 years, respectively, with the sentences to be served consecutively.

The conviction related to the July 13, 1997 shooting of Samuel Rodriguez ("Rodriguez"). While several facts relating to the shooting were contested at trial, there is no dispute that sometime after 2 a.m. on July 13, 1997, in the midst of an altercation Jones's mother and brother were engaged in with Rodriguez outside of their building, Jones ran up to his apartment to retrieve a gun. He returned outside and fired sever-

---

1. The factual summary below derives from the following documents: Jones's amended Habeas Corpus Petition, filed June 8, 2006 (the "Petition"), the Affidavit in Opposition of T. Charles Won, dated December 14, 2006 ("Won Aff."), and the exhibits cited therein. Except where specifically referenced, no further citation to these sources will be made.

al shots at Rodriguez, hitting him once in the chest and once in the back, causing his death.

At trial, Jones testified that he shot at Rodriguez only to scare him, not kill him. Further, Jones argued that the shooting was justified because Rodriguez was threatening his mother and he believed Rodriguez owned a gun. Jones alleged that he began firing when it appeared to him that Rodriguez was reaching back for a gun.

## B. *POST–CONVICTION PROCEED-INGS*

### 1. *Direct Appeal*

Petitioner appealed his conviction to the Appellate Division, First Department, raising the following claims: (1) the evidence at trial supported a finding that Jones's conduct was reckless as opposed to intentional and thus he was deprived his due process right to a fair trial when the trial court refused to charge second-degree manslaughter as a lesser-included offense; (2) the trial court's direct questioning of Jones conveyed skepticism of the merits of his defense and his credibility, thus depriving him of his due process right to a fair trial; and (3) the sentence imposed was excessive.

On June 28, 2001, the Appellate Division, First Department (the "Appellate Division") unanimously affirmed Jones's conviction, and on September 14, 2001 the New York Court of Appeals denied Jones's application for leave to appeal. *People v. Jones,* 284 A.D.2d 277, 726 N.Y.S.2d 853 (App.Div. 1st Dept.) *lv. denied,* 96 N.Y.2d 940, 733 N.Y.S.2d 380, 759 N.E.2d 379 (2001).

### 2. *Motion to Vacate*

Jones subsequently moved in New York Supreme Court, Bronx County to have his judgment of conviction vacated pursuant to New York Criminal Procedure Law ("N.Y.C.P.L.") § 440.10 on the grounds that: (a) the prosecution failed to disprove his justification defense at trial; (b) he was denied a right to an impartial jury and fair trial because a jury note for stock quotes during deliberations, and a request that the trial court repeat the justification instructions 15 minutes after deliberation began, indicated the jury was not attentive; and (c) the prosecutor committed misconduct by making prejudicial comments during summation. Jones's motion was denied because the claims were all record-based and therefore procedurally barred pursuant to N.Y.C.P.L. § 440.10(2)(c).

### 3. *Writ of Error Coram Nobis*

On December 16, 2004 Jones sought a writ of error *coram nobis* from the Appellate Division on the ground that his appellate counsel was ineffective for failing to raise the following claims on direct appeal: (1) the prosecution did not present legally sufficient evidence to disprove his justification defense; (2) Jones was denied the right to a impartial jury and fair trial; (3) trial counsel should have objected to the improper jury instructions on "intent"; (4) and the sentence was improper because the trial court relied on incorrect information in the probation report, made biblical references at sentencing and based the sentence in part on incidents that occurred while Jones was at Rikers Island Correctional Facility ("Rikers") awaiting trial.

On January, 19, 2006 the Appellate Division denied Jones's writ petition, and on May 8, 2006, the New York Court of Appeals denied his application for leave to appeal.

### 4. *Jones' Amended Habeas Corpus Petition*

Jones now seeks, pro se, a writ of habeas corpus on the following grounds: (1) the

trial court deprived him of his right to due process by refusing to charge second degree manslaughter as a lesser included offense (raised on direct appeal); (2) the trial court's questioning of petitioner deprived him of his due process right to a fair and impartial trial (raised on direct appeal); (3) the prosecution's evidence at trial was insufficient to disprove petitioner's defense of justification (raised in N.Y.C.P.L. § 440.10 motion); (4) petitioner was denied the right to an impartial and attentive jury (raised in N.Y.C.P.L. § 440.10 motion); (5) and petitioner received ineffective assistance of appellate counsel (raised in writ of error *coram nobis* application).

Having already reviewed and denied Jones's petition, the Court sets forth below the reasoning for its decision.

## II. *DISCUSSION*

### A. *LEGAL STANDARDS FOR HABEAS RELIEF*

A petitioner in custody pursuant to a judgment of a state trial court is entitled to habeas relief only if he can show that his detention violates the United States Constitution or federal law or treaties of the United States. *See* 28 U.S.C. § 2254(a). Before seeking federal relief, a petitioner generally must have exhausted all available state court remedies. *See* 28 U.S.C. § 2254(b) and (c). To do so, the petitioner must have fairly presented his federal claims to the highest available state court, setting forth all of the factual and legal allegations he asserts in his federal petition. *See Daye v. Attorney Gen.*, 696 F.2d 186, 190 n. 3, 191–92 (2d Cir. 1982). Here, there is no dispute that Jones has exhausted his state court remedies with respect to each of his current claims.

A federal court's authority to review a habeas petition also depends on whether the state court adjudicated the petitioner's claims on the merits or on procedural grounds. A state court adjudicates a petitioner's federal claims "on the merits" under 28 U.S.C. § 2254(d) when it: (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment. *See Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir.2001). If decided on the merits, a habeas petition will not be granted on any such claim unless the claim involved a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

Alternately, state court adjudication of a petitioner's claims may result in a judgment based on state law grounds that are independent of the federal questions raised and that are adequate to support the judgment. *See Lee v. Kemna*, 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002) (*citing Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); *Garcia v. Lewis*, 188 F.3d 71, 76–78 (2d Cir.1999). Where the highest state court that rendered a judgment in the case "clearly and expressly states that its judgment rests on a state procedural bar," such procedural default constitutes independent and adequate state grounds to deny habeas relief. *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (internal quotations and citations omitted); *see also Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir.1996); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir.1995). In such cases, a federal court is generally barred from reviewing the petitioner's claims.

### B. *TRIAL COURT'S FAILURE TO CHARGE SECOND DEGREE MANSLAUGHTER*

Jones's first claim is that the trial court denied his due process rights by failing to submit to the jury the lesser

included offense of second degree manslaughter. This claim was clearly decided on the merits by the state court. On direct appeal, the Appellate Division unequivocally stated "there was no reasonable view of the evidence viewed most favorably to defendant, that defendant was guilty of the lesser offense but not the greater." *Jones,* 726 N.Y.S.2d at 853.

Having been adjudicated on the merits, this claim must fail because it is not contrary to clearly established federal law. While the Supreme Court "has held that the failure to submit lesser included offenses is a violation of Due Process in capital cases, is has expressly reserved the question of whether the rule applies in non-capital cases." *Mannix v. Phillips,* 390 F.Supp.2d 280, 295 (S.D.N.Y.2005) (*citing Beck v. Alabama,* 447 U.S. 625, 638 n. 14, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980)). As a decision "interpreting the constitution to require the submission of instructions on lesser-included offenses in non-capital cases would involve the announcement of a new rule," the Second Circuit has expressly held that this Court is precluded from considering this issue. *Jones v. Hoffman,* 86 F.3d 46, 48 (2d Cir.1996) (*citing Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)); *see also Bulla v. Lempke,* 2006 WL 2457945, at *11 (S.D.N.Y. Aug.25, 2006) ("The Supreme Court, however, has never held that there is a federal constitutional right to have a jury charged with a lesser included offense. Consequently, the Second Circuit has held that habeas relief may not be granted on this basis.") (citations omitted); *Mannix,* 390 F.Supp.2d at 295 ("Thus, a claim that a state court failed to charge a lesser-included offense is not cognizable in a federal habeas corpus proceeding.").

## C. *TRIAL COURT'S QUESTIONING OF JONES*

■ At several points during the course of Jones's testimony, the trial court direct-ly intervened in the examination to question him. Jones asserts that the trial court's allegedly adverse and prejudicial questioning deprived him of his right to a fair trial in violation of his due process rights. On direct appeal, the Appellate Division held that "[t]he court's participation in the examination of defendant was not adversarial and was not so excessive as to deprive defendant of a fair trial, given the court's instructions to the jury." *Jones,* 726 N.Y.S.2d at 853. Thus, this claim was also adjudicated on the merits by the state court.

The trial court first questioned Jones on how long he and his family lived in their current apartment before Jones acquired a gun. Jones argues that the questioning served no other purpose than to attempt to undermine his credibility. Jones had testified that he needed the gun to protect his family in their housing project, but the court's questioning emphasized that Jones's family had lived in the premises for twelve years before Jones acquired the gun.

The court also questioned Jones regarding how long it took him to retrieve the gun from the apartment on the night of the shooting. First, the Court mistakenly asserted that Jones lived on the seventh floor, when in fact he lived on the second floor. Once defense counsel set the record straight, the trial court continued:

> The Court: Im sorry, [how long did it take] up two floors, get into your apartment, go down two floors and return to the scene, how much time passed?
>
> Jones: Like less than a minute.
>
> The Court: Less than a minute?
>
> Jones: It was right there.
>
> The Court: Was the front door to the project open?

Jones: Yes, it was open.

The Court: Or locked?

Jones: It was open, but if it was locked, I would have had to open it up with a key.

The Court: Was your apartment open or locked?

Jones: My apartment was open.

The Court: It was open?

Jones: Yes, my mom went downstairs to walk the dog, it was open.

(Trial Tr. 433–435.) Jones asserts that the court's questioning served no purpose but to attempt to impeach his testimony by challenging his chronology of events and undercut his defense that he was acting in the heat of the moment and not calculatingly.

Finally, the trial court questioned Jones regarding whether Rodriguez had a chain wrapped around his hand:

The Court: When you left the scene and your mother and your brother and Samuel Rodriguez, I thought you said the chain was wrapped around his hand?

Jones: Yeah, he had it wrapped around, like he did like this.

The Court: And when you returned, where was the chain?

Jones: I wasn't even thinking about the chain. As soon as I saw him, I turned back, saw him backing up, I don't know—I didn't know where the chain was. I don't know if he still had it in his hand or whatever. As soon as I came back out, I saw him backing up. First thing I'm thinking, because he had a gun, because around the project—

The Court: Just answer my question, did you see the chain?

Jones: No, I didn't see the chain.

The Court: You did not see the chain?

Jones: I don't know where it was, I just saw him backing out.

The Court: Did you ever see him swing the chain? ?

Jones: No.

(Trial Tr. 435–436.) Again, Jones asserts that the Court's questioning served no purpose but to impeach his testimony. Moreover, Jones maintains that the trial court's repetition of questions implied its disbelief of his testimony. Finally, Jones emphasizes how the trial court cut off his explanation of why the chain was not his main concern upon returning to the scene.

■ Regarding a trial court's questioning of a witness, the Second Circuit has stated that "it is abundantly clear that only infrequently does intervention by a trial judge rise to the level of a due process violation.... A trial judge in a criminal trial ... should take part where necessary to clarify testimony and assist the jury in understanding the evidence." *Gayle v. Scully,* 779 F.2d 802, 806 (2d Cir.1985) (citations omitted). Here, the trial court's questioning was well within constitutionally permissible bounds. While Jones takes exception to what he perceives as the trial court's adversarial questioning, "a trial is not rendered constitutionally unfair every time a trial judge asks a question ... clearly designed to challenge testimony favorable to the defense. The judge's intervention in the conduct of the trial must be both significant and adverse to the defense to a substantial degree before the risk of either impaired functioning of the jury or lack of appearance of a neutral judge conducting a fair trial exceeds constitutional limits." *Id.* (*quoting Daye v. Attorney Gen.,* 712 F.2d 1566, 1572 (2d Cir.1983)).

On each occasion in which the trial judge intervened in Jones's examination, the questioning sought to clarify a relevant aspect of Jones's testimony. While arguably some of the questioning can be char-

acterized as challenging Jones's testimony, the questions were aimed at clarifying testimony germane to the case. In this Court's assessment of the questioning, ultimately, the trial court's intervention was not significant and adverse to such a substantial degree that it exceeded constitutional limits. *See id.* at 807 (holding that trial court's questioning did not exceed constitutional bounds despite the fact that the trial transcript revealed "that frequently statements were made by the trial judge which may be described as caustic and sometimes sarcastic [in addition to comments that] were gratuitous and might have been better left unsaid"); *Johnson v. Scully,* 727 F.2d 222, 225–227 (2d Cir.1984) (finding trial was not unfair despite conceding that the trial court's actions were "troubling" where trial court asked prosecution witness to repeat damaging testimony and questioned the defendant's theory of the case).

Finally, as the Appellate Division emphasized, the trial judge's instructions are relevant. The trial court's jury charge included the following instruction: "You are not to consider anything I said during the trial or any questions I asked or any ruling that I made." (Trial Tr. 518.) Any potential prejudice resulting from the trial court's examination was minimized by this instruction to the jury. *See Messa v. Artus,* 2006 WL 3370438, at *7 (E.D.N.Y. Nov.20, 2006).

Accordingly, the Court concludes that the trial court's direct questioning of Jones did not violate his due process right to a fair trial.

### D. *CLAIMS RAISED IN JONES'S MOTION TO VACATE*

Jones's claims that the prosecution failed to disprove his justification defense, and that the jury was not impartial, were not raised in his direct appeal, but instead were subsequently raised in a motion to vacate the judgment of conviction pursuant to N.Y.C.P.L. § 440.10. The state court held these claims to be procedurally barred by N.Y.C.P.L. § 440.10(2)(c) because these issues appeared on the face of the record and Jones failed to raise them on direct appeal.[2]

 As the state court's denial of these claims rests on independent and adequate state grounds, habeas review of these claims by this Court is prohibited. *See Lambrix v. Singletary,* 520 U.S. 518, 522–23, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997). A state court decision finding a procedural default constitutes independent and adequate grounds where "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris,* 489 U.S. at 263, 109 S.Ct. 1038. Here, the state Supreme Court's November 10, 2003 decision clearly states that "[t]he defendant's motion is procedurally barred.... The defendant failed to raise any of these claims on his direct appeal." (*See* Won Aff., Exhibit 5.) The Appellate Division denied Jones leave to appeal without explanation. Thus, the "last reasoned" court decision expressly states that the judgment rests on a state procedural bar. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ("[W]here, as here, the last reasoned opin-

---

**2.** N.Y.C.P.L. § 440.10(2)(c) states that the court must deny a motion to vacate a judgment when, "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to defendant's unjustifiable failure ... to raise such ground or issue upon an appeal actually perfected by him."

ion explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

██ In such procedural default cases, a federal habeas court may review a petitioner's claims only if the petitioner demonstrates (1) cause for the default and resulting prejudice, or (2) that the failure to consider the claims will "result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546; *see also Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). As to the first test, "cause" is defined as "some objective factor external to the defense" that impeded the defendant's efforts to raise the claim. *See McCleskey v. Zant,* 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (citations omitted). To demonstrate prejudice, the petitioner must show more than that errors "created a possibility of prejudice, but [instead] that they worked to his actual and substantial disadvantage." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

██ The only "cause" Jones can plausibly assert for failing to raise these claims on direct appeal is the ineffective assistance of his appellate counsel. Counsel's "ineffectiveness in failing to properly preserve a claim for review in state court can suffice to establish cause for a procedural default only when the counsel's ineptitude rises to the level of a violation of a defendant's Sixth Amendment right to counsel." *Aparicio v. Artuz,* 269 F.3d 78, 91 (2d Cir.2001)(*citing Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000)). As will be discussed below, Jones has failed to demonstrate his appellate counsel's assistance was so ineffective as to violate the federal Constitution. Thus, Jones has not demonstrated cause for the default, and where a petitioner is unable to show cause, the Court need not consider actual prejudice. *See McCleskey,* 499 U.S. at 502, 111 S.Ct. 1454; *see also Acosta v. Giambruno,* 326 F.Supp.2d 513, 520 (S.D.N.Y.2004).

██ The Court may still review habeas claims that the state court found procedurally barred where such review may prevent a fundamental miscarriage of justice "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *see also Dixon v. Miller,* 293 F.3d 74, 81 (2d Cir.2002). The petitioner bears a high burden with respect to claims of actual innocence because entertaining such claims during habeas review is disruptive to the finality of criminal convictions and imposes a burden on the trial court. *See Herrera v. Collins,* 506 U.S. 390, 417, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Without new, clearly exculpatory evidence, even a meritorious claim of a constitutional violation may be insufficient grounds for excusing a procedural default. *See Speringo v. McLaughlin,* 202 F.Supp.2d 178, 189–90 (S.D.N.Y.2002) (*citing Schlup v. Delo,* 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). Jones presents no evidence to indicate any alleged constitutional errors relating to his conviction resulted in a fundamental miscarriage of justice as there is no dispute that Jones did in fact shoot and kill Rodriguez.

### E. *INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL*

Subsequent to Jones's direct appeal and motion to vacate, Jones sought a writ of error *corum nobis* claiming ineffective assistance of appellate counsel. The Appellate Division, "upon reading and filing the papers with respect to the motion, and due

deliberation having been had thereon," denied Jones's application. (*See* Won Aff., Ex. 8, Order dated Jan. 19, 2006.) The denial of Jones's application was decided on the merits. *See Aparicio,* 269 F.3d at 94 ("[t]he state court need only dispose of the petitioner's federal claim on substantive grounds, and reduce that disposition to judgment. No further articulation of its rationale or elucidation of its reasoning process is required."); *Kuhlman,* 261 F.3d at 311 ("Nothing in the phrase 'adjudicated on the merits' requires the state court to have explained its reasoning process."). Thus, Jones's claim of ineffective assistance of appellate counsel is reviewed under the standard set forth in 28 U.S.C. § 2254(d)(1), requiring this Court to determine whether the Appellate Division's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law."

■ A criminal defendant's Sixth Amendment right to counsel includes the right to counsel on their first appeal. *See Id.* at 95. Jones can claim a constitutional violation if "the performance of counsel is so dismal that it ripens into a deprivation of counsel altogether and potentially violates [his] Sixth Amendment right." *Id.* To prevail on this claim, Jones must demonstrate "not only that his counsel's representation was fundamentally defective, but also that, but for the counsel's errors, there is a reasonable probability that the result of the proceeding would have been different." *Id.* (*citing Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

Jones asserts that his appellate counsel was ineffective for failing to raise the following issues on appeal: (1) the prosecutions's failure to disprove Jones's justification defense; (2) Jones's failure to receive an impartial jury and fair trial as evidenced by a jury note seeking stock quotes and the jury requesting the trial court repeat its instructions on justification fifteen minutes after deliberations began; (3) trial counsel was ineffective for failing to object to the "intent" instruction to jury; and (4) Jones's sentence was illegal because it was based on misinformation and incidents that occurred while incarcerated, and the trial judge made biblical references.

■ To demonstrate ineffective assistance of appellate counsel, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994). Moreover, appellate counsel is "entitled to exercise [its] professional judgment to focus on one or two key issues while winnowing out weaker arguments." *Benn v. Stinson,* 917 F.Supp. 202, 206 (S.D.N.Y. 1995). Here, in a forty-three page brief, appellate counsel focused on three main issues: the trial court's failure to submit a lesser included offense charge to the jury, the trial court's questioning of petitioner, and whether the sentence was excessive. This Court "should not second-guess an attorney's reasonable professional judgment as to the most promising arguments on appeal, even though the appeal was unsuccessful." *DeJesus v. Senkowski,* 2006 WL 2707330, at *14 (S.D.N.Y. Sept.20, 2006). Jones's ineffective assistance of appellate counsel claim can only prevail if he can show that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo,* 13 F.3d at 533. As discussed below, the claims Jones asserts that appellate counsel should have raised are insubstantial and clearly weaker than the arguments appellate counsel chose to highlight on direct appeal.

### 1. *Failure to Disprove Justification Defense*

■ Under New York law, Jones would be justified in using deadly force if he "reasonably believed such to be necessary to defend himself . . . or a third person [and] reasonably believes that such other person is using or is about to use deadly force." New York Penal Law §§ 35.15(1),(2)(a). The prosecution has the burden of proof and must disprove justification beyond a reasonable doubt. *Matter of Y.K.*, 87 N.Y.2d 430, 433, 639 N.Y.S.2d 1001, 663 N.E.2d 313 (1996). Jones argues that the prosecution failed to present sufficient evidence to disprove his justification defense.

To overturn a conviction based on the insufficiency of the evidence, a petitioner must establish that considering "the evidence in the light most favorable to the State . . . no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir.2002). Here, the People presented three eyewitnesses who indicated that Rodriguez did not appear to be reaching for anything and was in fact leaning against a fence or gate when Jones shot him. These witnesses indicated that Rodriguez was not making imminent threats of deadly physical danger to either Jones or Jones's mother or brother when Jones began firing. Moreover, no gun was found on Rodriguez. While Jones and his mother and brother all testified that they saw Rodriguez reaching for something, the jury chose not to credit this testimony over the other witnesses. Viewing the evidence in the light most favorable to the people, a reasonable trier of fact could certainly conclude that the shooting was unjustified.

Thus, there is no basis to conclude that this argument would have likely succeeded if raised on direct appeal. Accordingly, Jones's appellate counsel was not ineffective for failing to assert this claim.

### 2. *Failure to Receive a Fair Trial and Impartial Jury*

Jones's also maintains that appellate counsel should have raised on appeal that Jones did not receive a fair trial from an impartial jury because a jury note requested stock quotes during deliberation and the jury requested the trial court repeat its instructions on justification fifteen minutes after deliberation. Jones's assertion that this conduct is sufficient evidence that the jury was inattentive, thus depriving him of a fair and impartial jury, is meritless.

■ The trial court appropriately dealt with the juror note requesting stock quotes, stating to the jury "I will be charitable to whoever inserted that [request] by saying I can only assume that it was an attempt at humor. This is a serious matter and if that was the intent, it is not a funny or humorous matter for business of this nature." (Trial Tr. 601–602.) The trial court's "treatment of juror misconduct and its decisions on a jury's impartiality are reviewed for abuse of discretion only, and only if juror misconduct and actual prejudice are found." *Melenciano v. Walsh*, 2005 WL 768591, at *6 (S.D.N.Y. Apr.6, 2005). The facts alleged by Jones fall far short of what would be necessary to show jury misconduct or actual prejudice to Jones. The trial court was within its discretion in chastising the jury and then moving on without further inquiry. With respect to the jury's request to have the justification instruction repeated, if anything, this shows the jury was in fact engaged and wanted to be sure it properly understood relevant instructions. This can hardly be a basis for claiming the jury was inattentive.

■ Moreover, appellate counsel correctly chose not to raise this issue because it was arguably not preserved for appellate review as trial counsel did not object or request an inquiry as to which juror sought the stock quotes. *See People v. Gonzalez,* 247 A.D.2d 328, 670 N.Y.S.2d 180, 180 (App.Div. 1st Dept.1998) ("Defendants current claim that he was denied his right to due process and a fair trial because the court failed to, sua sponte, disqualify a juror ... on the ground that the juror in question had been sleeping during portions of the trial, is unpreserved since defendant did not request an inquiry of the individual in question.").

As Jones has failed to demonstrate that the trial court abused its discretion in not inquiring further regarding the jury note requesting stock quotes and as trial counsel failed to request an inquiry, Jones has not demonstrated ineffective assistance of appellate counsel for failing to raise this claim.

### 3. *Trial Counsel's Failure to Object to "Intent Instruction"*

Jones claims that his appellate counsel should have asserted trial counsel's ineffective representation of Jones for failing to object to the trial court's charge on intent. On "intent," the trial court instructed the jury:

In general, you may presume that a person intends the natural and probable results of his conduct. This is a permissible inference that you may but need not accept. If you find that the defendant engaged in particular conduct, then you may consider what the natural and probable consequences of that conduct were. Then, after examining all the surrounding facts and circumstances you may consider whether it is reasonable to presume under these facts and circumstances, that the defendant intended the

natural and probable consequences of his conduct and if you find that it is reasonable to do so, you may find that he intended those consequences to occur. Again, this is a permissible presumption, you may but need not accept it.

(Trial Tr. 534–35.)

■ It is "well established that, while a jury instruction in a criminal case that *presumes* that a person intends the ordinary consequences of his voluntary acts violates due process, an instruction that merely *permits* a jury to infer that an accused intends such consequences of such acts is acceptable." *United States v. Nelson,* 277 F.3d 164, 197 (2d Cir.2002) (citations omitted) (emphasis in original). Here, the jury instruction clearly indicates that the inference that Jones intended the consequences of his voluntary acts is permissive ("this is a permissible presumption, you may but need not accept it"), and thus not a violation of Jones's due process rights. *See id.* (the instruction "you may infer" held to unambiguously indicate a permissible inference); *People v. McKenzie,* 67 N.Y.2d 695, 499 N.Y.S.2d 923, 490 N.E.2d 842, 842 (1986).

Thus, it does not constitute ineffective assistance for appellate counsel not to have raised the ineffectiveness of trial counsel for failing to object to this instruction as there was nothing constitutionally objectionable about it.

### 4. *Sentence Violated Due Process*

Finally, Jones argues that his sentence was improper and appellate counsel's assistance was ineffective for failing to raise on appeal several improprieties that occurred at sentencing. First, Jones asserts that the trial court relied on incorrect information in the probation report in imposing the maximum statutory sentence. The trial court stated that "the probation re-

port notes that while at liberty on this particular charge he was rearrested on an assault charge." (Sen. Tr. 21.) This was incorrect as Jones was never released after his arrest. The incidence referenced took place while Jones was incarcerated at Rikers. However, Jones is incorrect in asserting that his sentence was based on this misinformation. Defense counsel immediately advised the trial court that "[a]ny assault that that probation officer is incorrectly addressing is referring to Rikers Island, not out on the street." (Sen. Tr. 22.)

■ Generally, "as a matter of due process, an offender may not be sentenced on the basis of materially untrue assumptions or misinformation." *People v. Naranjo*, 89 N.Y.2d 1047, 659 N.Y.S.2d 826, 681 N.E.2d 1272, 1272 (1997); *United States v. Lee*, 818 F.2d 1052, 1055 (2d Cir.1987). As due process "dictates that a sentence may not be based on materially false facts or misinformation, an effective chance to respond to the information presented to the sentencing court is critical." *Arocho v. Walker*, 2001 WL 856608, at *4 (S.D.N.Y. July 27, 2001) (citation omitted). Defense counsel did respond and the trial court clearly registered that any assault allegations in fact arose out of an incident at Rikers.

As the trial court continued, it did not again reference an assault committed while Jones was at liberty. The court focused on the nature and circumstances surrounding Jones's shooting of Rodriguez and the trial court clearly based its sentence on the charges on which Jones was convicted, stating:

> This was a crime that was senseless. It was unprovoked. It was violent. It was vicious. The fact that your client had the gun was one thing. He had no need to leave the safety of the street and go up to his apartment and come down and take the gun and kill Mr. Rodriguez. A blind man could have seen that this was not necessary. This was not one shot. This was not two shots. He fired several times. He shot him in the back as well.

(Sen. Tr. 23.) There is no indication that the sentence was improperly based on the misinformation in the sentence report. The trial court was focused foremost on the evidence adduced at trial.

It does appear, however, that the trial court found incidents that occurred while Jones was incarcerated at Rikers Island relevant to Jones's sentencing. The probation report, and the prosecutor at sentencing, reference several infractions that occurred while Jones was incarcerated, including two fighting incidents and possessing prison contraband. The trial court stated, "based upon what's happened at Rikers, what happened at this trial … I find that [Jones] is a violent and vicious individual. The probation department report points out that he displayed a willingness to engage in violent behavior without regard for human life." (Sen. Tr. 24–25.)

■ It is well established that judges have the authority to exercise broad discretion in imposing a sentence within a statutory range. *See United States v. Booker*, 543 U.S. 220, 233, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); *Naranjo*, 659 N.Y.S.2d 826, 681 N.E.2d at 1272 (the sentencing court is "wisely allocated wide latitude as [it] is recognized to be in a superior position to dispense proportionate and fair punishment."). Unlike trial, at sentencing, "the judge may consider hearsay, evidence of uncharged crimes, dropped counts of an indictment, and crimes charged that resulted in acquittal." *Arocho*, 2001 WL 856608 at *4 (*citing United States v. Romano*, 825 F.2d 725, 728 (2d Cir.1987)). What the trial court cannot do is rely on information that is

clearly unreliable or inaccurate. *See Naranjo*, 659 N.Y.S.2d 826, 681 N.E.2d at 1272. There is no evidence that the sentencing court relied on misinformation at sentencing. Jones's trial counsel did not dispute the fact that the incidents referenced by the sentencing court occurred at Rikers Island; trial counsel merely attempted to explain these incidents, stating "there are these gangs and violence that's going on and what is he supposed to do, stand back and not defend himself when he is over at Rikers Island." (Sen. Tr. 14–15.)

█ As there is no evidence that the trial court relied on misinformation, it did not exceed its discretion and did not violate Jones's due process rights in taking the incidents at Rikers into account when it imposed its sentence on Jones.[3]

█ Jones also takes issue with appellate counsel's refusal to raise on appeal the trial court's biblical reference at sentencing. While the trial court did reference the story of Cain and Abel, there is no indication that sentencing was influenced by the judge's biblical or religious convictions. The point being made by the trial court was that Rodriguez's death had an impact beyond just him. The trial court stated that "what God was pointing out was that he was taking—Cain was taking or had taken not only one life but the lives of all the future progeny, all of the people who might have descended from that deceased." (Sen. Tr. 23.) Taken in context it is clear these comments are intended to reflect on the larger ramifications of

Jones's actions. In light of the fact that the trial court's statements came shortly after Rodriguez's mother spoke regarding the impact of the loss of her son, the trial court's comments were not inappropriate and do not indicate the sentence was improperly arrived at in violation of Jones's due process rights.

In sum, Jones has failed to demonstrate that he was effectively deprived of his Sixth Amendment right to counsel on his direct appeal. Even considering "in the aggregate, in order to determine their cumulative effect," *see DeJesus*, 2006 WL 2707330 at *13, the several issues Jones asserts that appellate counsel should have raised on direct appeal, they fail to show that appellate counsel's representation was fundamentally defective. Moreover, Jones has failed to demonstrate that but for appellate counsel's failure to raise these issues on appeal, there was a reasonable probability that the outcome of the proceeding would have been different. Thus, the state court's finding was not contrary to, or an unreasonable application of, federal law.

## III. *ORDER*

For the reasons set forth above, it is hereby

**ORDERED** that the Court's Order of March 28, 2007 dismissing the amended petition (Docket No. 14) of petitioner Michael Jones ("Jones") is amended to incorporate the discussion set forth above; and it is further

3. Jones's reliance on the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), is misplaced. In *Apprendi*, the supreme court stated that "any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348 (emphasis added). Here, the sentence imposed was the statutory maximum but did not exceed it, thus *Apprendi* is inapplicable. *See Booker*, 543 U.S. at 233, 125 S.Ct. 738 ("For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.")

**ORDERED** that Jones's amended petition Michael Jones for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.

As Jones has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *Lucidore v. N.Y. State Div. of Parole,* 209 F.3d 107, 111–13 (2d Cir.2000).

The Clerk of the Court is directed to close this case.

**SO ORDERED.**